IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HORIZON SERVICES, INC. and EASTERN ALLIANCE INSURANCE COMPANY, | § § § § | No. 172, 2022 |
| Plaintiffs Below, Appellants, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § § | C.A. No. N21C-10-044 |
| JOHN HENRY and THE CINCINNATI INSURANCE COMPANY, | § § § § | |
| Defendants Below, Appellees. | § § | |

Submitted: June 7, 2023
Decided: September 1, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED AND REMANDED**.

H. Garrett Baker, Esquire (*argued*), Francis D. Nardo, Esquire, ELZUFON AUSTIN & MONDELL, P.A., Wilmington, Delaware, *for Appellants Horizon Services, Inc. and Eastern Alliance Insurance Company*.

Jonathan B. O'Neill, Esquire, Amanda K. Dobies, Esquire, KIMMEL, CARTER, ROMAN, PELTZ & O'NEILL, P.A., Christiana, Delaware, *for Appellee John Henry*.

William A. Crawford, Esquire (*argued*), FRANKLIN & PROKOPIK, Newark, Delaware, *for Appellee Cincinnati Insurance Company*.

**LEGROW**, Justice:

This appeal requires us to interpret a section of the workers' compensation act that addresses when an employer or its workers' compensation insurance carrier may assert a lien against benefits an injured employee recovers from other sources. In a previous action between these parties, we addressed whether the exclusive-remedies provision in the workers' compensation act precluded an injured employee from pursuing recovery from an uninsured motorist policy. After we held that the exclusive-remedies provision did not apply, the employer and its workers' compensation carrier sought a declaratory judgment that they are permitted to assert a lien against any recovery the employee might obtain for injuries already compensated under the workers' compensation act.

The employee and the uninsured motorist insurer contend that any such lien is barred by statute, relying on this Court's decision in *Simendinger v. National Union Fire Insurance Co.*[1] The Superior Court followed that binding precedent as it was required to do and dismissed the declaratory judgment claim. We now conclude, however, that *Simendinger* was decided in error. We therefore reverse the Superior Court's decision and hold that the workers' compensation act expressly allows the employer and its workers' compensation carrier to assert a subrogation

---

[1] 74 A.3d 609 (Del. 2013).

lien against benefits paid to the employee under the employer's uninsured motorist policy.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellee John Henry sustained injuries in an automobile accident caused by a non-party. At the time of the accident, Henry was traveling in a vehicle owned by his employer, Appellant Horizon Services, Inc. ("Horizon"), and was acting in the course of his employment.

Henry received over $584,000 in workers' compensation benefits from Horizon and its workers' compensation insurance carrier, Appellant Eastern Alliance Insurance Company ("Eastern"). Henry also pursued damages from the non-party tortfeasor, who held a $50,000 liability insurance policy. Henry ultimately settled with the tortfeasor's insurance carrier for the policy limit. After deducting attorneys' fees and costs, Henry reimbursed the remainder of his recovery from the tortfeasor's policy to Appellants pursuant to Delaware's Workers' Compensation Act, 19 *Del. C.* §§ 2301–2396 (the "WCA").[3]

### A.    Henry's UIM Action

The Horizon vehicle Henry operated at the time of the accident was covered by an underinsured-motorist ("UIM") insurance policy issued by Cincinnati

---

[2] Unless otherwise noted, the recited facts are taken from the Superior Court's May 2, 2022 opinion. *See Horizon Servs., Inc. v. Henry*, 2022 WL 1316236 (Del. Super. May 2, 2022).
[3] *See* 19 *Del. C.* § 2363(e).

Insurance Company ("Cincinnati") that named Horizon as the insured. Henry also had a personal automobile liability policy issued by State Farm Mutual Automobile Insurance Company ("State Farm") that provided UIM coverage (the "State Farm Policy").[4] After recovering the tortfeasor's policy limit, Henry filed claims with Cincinnati and State Farm for UIM benefits under each carrier's policy.[5] When both carriers denied Henry's claims, Henry and his wife filed separate actions in the Superior Court against Cincinnati and State Farm, which the court later consolidated into one action (the "UIM Action").[6]

### 1.    Cincinnati's Motion to Dismiss and Henry's Appeal

Cincinnati moved to dismiss Henry's complaint on the ground that 19 *Del. C.* § 2304, the WCA's exclusive-remedies provision, precluded him from recovering UIM benefits under Cincinnati's policy.[7] The accident at issue occurred in September 2015. At the time of the accident, the WCA's exclusive-remedies provision provided as follows:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident

---

[4] *See Henry v. Cincinnati Ins. Co.*, 2021 WL 1545765, at *1 (Del. Super. Apr. 19, 2021). Appellants do not seek reimbursement from any UIM benefits Henry might receive under the State Farm Policy. *See* App. to Answering Br. at B2 (Compl. ¶ 4). At oral argument in this appeal, counsel for Appellants represented that they were precluded by law from seeking reimbursement under the State Farm Policy. Video of Oral Argument, *Delaware Courts*, at 04:58–05:21 (June 7, 2023) [hereinafter Oral Argument], https://tinyurl.com/yck365mx.
[5] *See Henry*, 2021 WL 1545765, at *1.
[6] *See id.* at *1 n.5.
[7] *See Henry v. Cincinnati Ins. Co.*, 2018 WL 3640835, at *1 (Del. Super. July 31, 2018).

arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.[8]

In 2016, after the accident, the General Assembly amended the exclusive-remedies provision by adding the following italicized language:

> Except as expressly included in this chapter and *except as to uninsured motorist benefits, underinsured motorist benefits, and personal injury protection benefits*, every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.[9]

In his opposition to Cincinnati's motion to dismiss, Henry argued that the amended exclusive-remedies provision applied and permitted employees to recover both workers' compensation benefits and UIM benefits under an employer's insurance policy.[10]

The Superior Court agreed with Cincinnati and dismissed Henry's UIM claims. First, the Superior Court found that the pre-amendment version of the exclusive-remedies provision applied because it was in effect at the time of the accident.[11] Second, the court concluded that, under that version of Section 2304,

---

[8] 19 *Del. C.* § 2304 (2016).
[9] 80 Del. Laws, ch. 420, § 1 (2016) (codified at 19 *Del. C.* § 2304) (emphasis added).
[10] *See Henry*, 2018 WL 3640835, at *1.
[11] *See id.* at *3–4.

4

Henry was precluded "from receiving both workers' compensation benefits and UIM benefits under [Horizon's] insurance policy."[12]  Henry appealed.

By opinion dated June 11, 2019 ("*Henry I*"),[13] this Court reversed.  The Court agreed with the Superior Court's conclusion that the pre-amendment version of Section 2304 applied to Henry's claim.[14]  This Court, however, held the pre-amendment version of the exclusive-remedies provision did not preclude Henry from recovering against Cincinnati, who, as the provider of Horizon's UIM coverage, did not fall within the scope of the statute's definition of "employer."[15]  Rather, this Court reasoned, when Cincinnati is sued in its capacity as UIM-coverage provider, "Cincinnati steps into the shoes of the alleged tortfeasor."[16]  And because Cincinnati was being sued in that capacity, which is "permi[ssible] under 19 *Del. C.* § 2363," the exclusive-remedies provision did not provide Cincinnati with a defense.[17]

### 2. The Proceedings on Remand

After Henry's claims were reinstated on remand, Eastern and Horizon moved to intervene to assert a lien against any UIM benefits that Henry recovers from Cincinnati.  The Superior Court denied the motion, holding that "there is no statutory

---

[12] *Id.* at *4 (citing *Simpson v. State*, 2016 WL 425010, at *4 (Del. Super. Jan. 28, 2016)).
[13] *Henry v. Cincinnati Ins. Co.* ("*Henry I*"), 212 A.3d 285 (Del. 2019).
[14] *Id.* at 289–90.
[15] *Id.*
[16] *Id.* at 290.
[17] *Id.* at 290–91.

5

right of recovery for a worker's compensation lien against UIM insurance coverage."[18] Relying on this Court's decisions in *Simendinger v. National Union Fire Insurance Co.*[19] and *Adams v. Delmarva Power & Light Co.*,[20] the Superior Court concluded that "decisional law is settled":

> A worker's compensation lien may not be asserted against recovery from UIM benefits regardless of whether that insurance coverage is secured by an employee or an employer. Therefore, since neither [Horizon] nor [Eastern] has a lien against UIM benefits paid to Henry, neither has a statutory right to intervene in this action.[21]

The Superior Court also held that *Henry I* did not overrule *Adams* or *Simendinger*.[22] In the Superior Court's view, when this Court observed that a UIM insurance carrier "steps into the shoes of the alleged tortfeasor," it merely "addressed burdens of proof and the requirement to establish fault" and did not open the door for employers to seek reimbursement through an employee's recovery of UIM benefits.[23] Horizon and Eastern moved for certification of an interlocutory appeal, which the Superior Court denied.[24] In refusing certification, the Superior Court reasoned that interlocutory review would not be efficient and there were other avenues of relief available to Horizon and Eastern, including "pursuing a separate

---

[18] *Henry*, 2021 WL 1545765, at *4.
[19] 74 A.3d 609 (Del. 2013).
[20] 575 A.2d 1103 (Del. 1990).
[21] *Henry*, 2021 WL 1545765, at *3.
[22] *Id.*
[23] *Id.*
[24] *Henry v. Cincinnati Ins. Co.*, 2021 WL 1923710, at *3 (Del. Super. May 13, 2021).

6

declaratory judgment action."[25]  This Court dismissed Horizon and Eastern's appeal in the UIM Action on June 10, 2021.[26]

## B.    This Declaratory Judgment Action

On October 6, 2021, Horizon and Eastern filed this declaratory judgment action seeking a declaration that "any recovery of damages paid to [Henry]" in the UIM Action "shall, after deducting legal expenses, first reimburse [Horizon and Eastern] pursuant to 19 *Del. C.* § 2363(e)."[27]  The complaint in this action expressly disclaims "a reimbursement right against [Henry's] recovery from his own underinsured motorist carrier, . . . consistent with Delaware's collateral source doctrine and *Adams*."[28]

Cincinnati, later joined by Henry,[29] moved for judgment on the pleadings. Advancing arguments largely mirroring those made in its opposition to the motion to intervene in the UIM Action, Cincinnati argued that Horizon and Eastern were not statutorily entitled to UIM benefits recovered by Henry under Cincinnati's policy.  Cincinnati also argued that exclusions in the UIM policy barred Henry—and by extension, Horizon and Eastern—from recovering damages previously paid by another insurer, including a workers' compensation carrier.  In response, Horizon

---

[25] *Id.*
[26] *E. All. Ins. Co. v. Henry*, 254 A.3d 396, 2021 WL 2418979, at *2 (Del. June 10, 2021) (TABLE).
[27] App. to Answering Br. at B14.
[28] *Id.* at B2 (Compl. ¶ 4).
[29] *See* App. to Answering Br. at B25–26.

and Eastern argued that the 2016 amendment to the exclusive-remedies provision and this Court's decision in *Henry I* permitted their assertion of a lien against any UIM benefits Henry might recover from Cincinnati.

The Superior Court entered judgment in favor of Cincinnati and Henry. Relying on this Court's decisions in *Hurst v. Nationwide Mutual Insurance Co.*[30] and *Simendinger*,[31] the court held that 19 *Del. C.* § 2363(e) precludes an employer or its workers' compensation carrier from recovering UIM benefits that an employee receives under an employer-owned UIM policy. The court also concluded that the plain language of Section 2363(e) limits Horizon's right to reimbursement for workers' compensation benefits to the damages recovered from the non-party tortfeasor.

The Superior Court also concluded, once again, that *Henry I* did not overrule *Simendinger*. At the trial court level, Appellants argued that *Henry I* deemed Cincinnati to be a third-party insurer for purposes of Section 2363(e) and, as a result, impliedly overruled *Simendinger*. The Superior Court disagreed, stating: "This court reads the reference to Cincinnati standing in the shoes of an alleged third-party tortfeasor as dicta, intending to be illustrative of why Cincinnati could not invoke

---

[30] 652 A.2d 10, 15 n.2 (Del. 1995) ("We note that the General Assembly has eliminated the ability of an employer's workmen's compensation carrier to assert a priority lien against an injured employee's right to payment pursuant to the employer's uninsured motorist coverage.") (citing 19 *Del. C.* § 2363).

[31] 74 A.3d at 611 (adopting the interpretation of Section 2363 set forth in *dicta* in *Hurst*).

8

the [exclusive-remedies] provision, as opposed to impliedly overruling a well-settled principle of law."[32]  The Superior Court therefore granted Appellee's motion for judgment on the pleadings without reaching the issue of whether Cincinnati's policy excludes Appellants' claims.

This appeal followed.

## C.      The Parties' Contentions on Appeal

Appellants ask us to reverse the Superior Court's judgment, arguing that Section 2363(e) permits employers to assert a lien against an employee's recovery from an employer-owned UIM policy.[33]  Appellants argue that this Court's reasoning and holding in *Henry I* compels this conclusion.  According to Appellants, because *Henry I* found that employees may pursue UIM benefits under Section 2363(a) on the ground that the UIM carrier stands in the shoes of the third-party tortfeasor, the employer has a right to subrogate against those benefits under Section 2363(e).[34]  That conclusion, Appellants acknowledge, would conflict with *Simendinger*, which held that "an employer's [workers'] compensation carrier [may not] assert a priority lien against an injured employee's right to payment pursuant to

---

[32] *Henry*, 2022 WL 1316236, at *4.

[33] A significant portion of the Appellants' briefs asserted that the 2016 version of the exclusive-remedies provision allowed Appellants to assert a lien against UIM benefits recovered by Henry. *See* Am. Opening Br. at 17–27; Reply Br. at 2–7.  At oral argument, however, Appellants clarified that their right to subrogate against Henry's UIM recovery flows from Section 2363, regardless of which version of the exclusive-remedies provision applies.  *See* Oral Argument, *supra*, at 07:37–09:42, 13:30–15:10

[34] Oral Argument, *supra*, at 13:30–15:10; *see* Am. Opening Br. at 23–27.

the employer's uninsured motorist coverage."[35]  Appellants therefore ask us to overrule *Simendinger*.[36]

Appellees respond that the Superior Court correctly concluded that "well-established" decisional law precludes Appellants from recovering any UIM proceeds that Henry might recover from Cincinnati.[37]  Appellees point to an exception at the end of Section 2363(e), asserting, as did the Superior Court, that Section 2363(e) "limits an employer's right to reimbursement 'only from the third party liability insurer.'"[38]  Because Cincinnati is not a "third party liability insurer," Appellees argue, Horizon may not recover reimbursement from Henry's recovery against Cincinnati.[39]

Appellees further argue that the Superior Court's judgment may be affirmed on the alternative basis that Cincinnati's policy excludes Appellants' claim.[40]  In response, Appellants argue that the enforceability of the policy's exclusionary provisions are being litigated in the UIM Action and, because Appellants' claims for UIM benefits under the policy are derivative of Henry's claims, the enforceability

---

[35] *Simendinger*, 74 A.3d at 611 (quoting *Hurst*, 652 A.2d at 15 n.2).

[36] In their briefs, Appellants argued that the 2016 amendment to the exclusive-remedies provision "impliedly overruled *Simendinger*."  Am. Opening Br. at 23.  At oral argument, however, counsel for Appellants asked us to overrule *Simendinger*.  Oral Argument, *supra*, at 11:00–11:55.

[37] Answering Br. at 16.

[38] *Id.* (emphasis omitted).

[39] Oral Argument, *supra*, at 25:40–27:35.

[40] Answering Br. at 17–19.

and effect of the exclusionary provisions should be fully litigated in the UIM Action first.[41]  The Superior Court did not address the policy exclusions in its ruling.

## II.  STANDARD OF REVIEW

On appeal from a trial court decision granting a motion for judgment on the pleadings, this Court reviews the trial court's decision *de novo* to determine "whether the court committed legal error in formulating or applying legal precepts."[42]

## III.  ANALYSIS

The primary issue before us is whether an employer or its workers' compensation insurance carrier may assert a lien against UIM benefits paid to an employee under the employer's UIM policy for injuries previously compensated under the WCA.  Because we conclude such a lien is statutorily permitted, we also briefly address the Appellee's alternative argument that the language of the UIM policy precludes the Appellants from maintaining a lien in this case.

---

[41] *See* Reply Br. at 10–11; Oral Argument, *supra*, at 11:55–13:30, 40:20–41:08.  Appellants concede that they "will recover nothing" if the exclusivity provisions are enforced to preclude Henry from any recovery.  Reply Br. at 10; Oral Argument, *supra*, at 13:00–13:13.

[42] *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1043 (Del. 2023) (quoting *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993)).

**A.** **Section 2363 of the WCA allows an employer or its workers' compensation insurer to assert a lien against benefits recovered from the employer's UIM policy.**

The issue raised on appeal requires this Court to interpret 19 *Del. C.* § 2363(e), which expressly addresses claims against a third-party tortfeasor relating to work-related injuries compensable under the WCA. The parties, however, devoted a substantial portion of their briefing and argument to Section 2304, the WCA's exclusive-remedies provision, and specifically which version of Section 2304 applies in this case. We therefore briefly address why Section 2304 is not dispositive of the issue on appeal before turning to the interpretation of Section 2363(e).

**1.** **The WCA's exclusive-remedies provision does not address subrogation liens.**

The parties' focus on the exclusive-remedies provision is misplaced. In *Henry I*, we held that Section 2304 does not bar an employee from recovering UIM benefits under a policy purchased by the employer from a third-party insurance provider.[43] The exclusive-remedies provision expressly applies to employers and employees, and we concluded in *Henry I* that a UIM insurer is not an "employer"

---

[43] *Henry I*, 212 A.3d at 289–90. In *Henry I*, the parties disputed which version of the exclusive-remedies provision applied. *Id.* at 289. We concluded that even the pre-amendment version of the statute allows an employee to recover UIM benefits under an employer-purchased policy. *See id.* (citing *Robinson v. State*, 2017 WL 1363894, at *1–2 (Del. Super. Apr. 11, 2017), *aff'd*, 176 A.3d 1274, 2017 WL 6422370 (Del. Dec. 18, 2017) (TABLE), in which the Superior Court held that the 2016 amendment to Section 2304 was not retroactive and did not apply to injuries occurring before its effective date).

12

for purposes of the WCA.[44] Instead, the UIM insurer "steps into the shoes of the alleged third-party tortfeasor."[45]

Having previously resolved the effect of the WCA's exclusive-remedies provision, that section does not inform our analysis in this appeal. The exclusive-remedies provision does not distinguish between claims an employee may maintain and those an employer may maintain. Accordingly, because we already concluded the exclusive-remedies provision does not bar Henry from asserting a UIM claim against Cincinnati, the provision likewise cannot bar Horizon or Eastern from asserting a lien against any benefits paid for such a claim. Rather, the right to assert a lien is governed by 19 *Del. C.* § 2363(e).

> **2.    Except for "PIP-eligible expenses," Section 2363(e) allows an employer or its workers' compensation insurer to assert a lien against benefits paid from an employer-purchased UIM policy.**

The Superior Court, relying on this Court's holding in *Simendinger*, concluded that Section 2363(e) does not permit an employer to assert a lien on UIM benefits. The Superior Court correctly followed *Simendinger* as binding precedent. But the issues raised on appeal require us to revisit *Simendinger* and its reasoning. Although we do not lightly overturn precedent,[46] we are compelled to conclude that

---

[44] *Id.* at 289–90.

[45] *Id.* at 290.

[46] *See Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1278 (Del. 2021) (observing that "the development of and adherence to precedent is an essential feature of common law systems, and as such, precedent should not be lightly cast aside.") (internal citation omitted).

13

*Simendinger*'s interpretation of Section 2363 is not consistent with the statute's terms. We reach that conclusion based on the statute's language and history as well as our decisions that pre-date *Simendinger*.

Section 2363 was adopted in 1955,[47] and this Court interpreted that section 30 years later in *Harris v. New Castle County*.[48] At the time *Harris* was decided, Section 2363(e) provided:

> In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the [WCA] to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.[49]

In *Harris*, we held that an employer has a statutory right under Section 2363(e) to assert a subrogation lien against an employee's recovery of benefits under a UIM policy maintained by his employer.[50]

---

[47] 50 Del. Laws, ch. 339, § 21 (1955); *see* Am. App. to Opening Br. at A36–42.
[48] 513 A.2d 1307 (Del. 1986).
[49] 50 Del. Laws, ch. 339, § 21 (1955); *see* Am. App. to Opening Br. at A41–42.
[50] *Harris*, 513 A.2d at 1309.

In 1993, Section 2363(e) was amended to limit an employer's right to assert a subrogation lien with respect to benefits payable under 21 *Del. C.* § 2118(h).[51] The 1993 amendment to Section 2363(e) added the following emphasized language:

(e) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or the employee's dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the Workmen's Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits, *except that for items of expense which are precluded from being introduced into evidence at trial by 21 Del. C. § 2118, reimbursement shall be had only from the third party liability insurer and shall be limited to the maximum amounts of the third party's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved.*[52]

Two years later, in *Hurst*, this Court stated in a footnote that "[w]e note that the General Assembly has eliminated the ability of an employer's workmen's compensation carrier to assert a priority lien against an injured employee's right to payment pursuant to the employer's uninsured motorist coverage."[53] This observation, which was not accompanied by any explanation, was *obiter dictum*; the sole issue raised in *Hurst* was whether an injured employee's personal UIM

---

[51] 69 Del. Laws, ch. 116, § 1 (1993); *see* Am. App. to Opening Br. at A43–45.
[52] *Compare* 50 Del. Laws, ch. 339, § 21 (1955), *with* 69 Del. Laws, ch. 116, § 1 (1993).
[53] *Hurst*, 652 A.2d at 15 n.2 (citing 19 *Del. C.* § 2363).

15

insurance carrier was entitled to a set-off against its policy limits for payments made under the employer's UIM policy.[54] To answer that question, this Court was required to interpret the Uninsured Motorist statute, 18 *Del. C.* § 3902. The issue raised in *Hurst* did not require the Court to interpret Section 2363 of the WCA, although that is what the footnote purported to address.[55]

In *Simendinger*, however, this Court adopted *Hurst*'s dictum as the correct interpretation of Section 2363(e).[56] *Simendinger* involved two employees who died in a motor vehicle collision during the course of their employment. The employees' estates received workers' compensation payments and filed claims against the employer's UIM insurance policy. The workers' compensation insurer sought to impose a subrogation lien on any UIM benefits paid to the employees' estates. This Court reversed the Superior Court's decision enforcing the lien under Section 2363(e) and adopted *Hurst*'s statement that the 1993 amendment to Section 2363(e) "eliminated the ability of an employer's work[ers'] compensation carrier to assert a priority lien against an injured employee's right to payment pursuant to the employer's uninsured motorist coverage."[57] Significantly, the decision in *Simendinger* relied on—and expressly quoted—the portion of the 1993

---

[54] *Id.* at 11.

[55] We expressly stated in *Simendinger* that this statement in *Hurst* was dicta. *See Simendinger*, 74 A.3d at 611.

[56] *Id.*

[57] *Id.* (quoting *Hurst*, 652 A.2d at 15 n.2).

16

amendment that states "reimbursement shall be had only from the third party liability insurer and shall be limited to the maximum amounts of the third party's liability insurance coverage."[58]

That quotation excluded the portion of the 1993 amendment that limited its scope to "items of expense which are precluded from being introduced into evidence at trial by 21 *Del. C.* § 2118."[59] The statutory language *Simendinger* overlooked is fundamental to understanding the 1993 amendment. By failing to consider the 1993 amendment's prefatory clause limiting the amendment to certain expenses under Section 2118, the *Simendinger* Court misconstrued the statute.

Section 2363's reference to "items of expense" that cannot be introduced at trial under 21 *Del. C.* § 2118 applies to personal injury protection ("PIP") expenses that are not "boardable." Under Section 2118, "non-boardable" expenses include those that were or could have been paid by a PIP policy.[60] An injured party in a tort action may not present evidence of those expenses as part of any requested damages award.[61] Therefore, the 1993 amendment to Section 2363(e) prevented an employer from obtaining a subrogation lien against an employee for PIP-eligible expenses, since the employee could not present evidence of those damages at a trial against a

---

[58] *Id.* at 612 (quoting 19 *Del. C.* § 2363(e)). In the decision at issue in this case, the Superior Court relied on the same incomplete statutory quotation relied on in *Simendinger*.

[59] 69 Del. Laws, ch. 116, § 1 (1993); *see* 19 *Del. C.* § 2363(e).

[60] *See* 21 *Del. C.* § 2118(h); Robert K. Beste, Jr. & Robert K. Beste, III, *Automobile Injury and Insurance Claims: Delaware Law and Practice* § 15.02 (rev. ed. 2019).

[61] 21 *Del. C.* § 2118(h); *see* Beste & Beste, *supra*, § 15.02.

tortfeasor or a UIM insurer.[62]  Under the lien exception added to Section 2363(e) in 1993, the only recourse available to an employer or its workers' compensation insurer for reimbursement of PIP-eligible expenses is the third-party tortfeasor's insurer, and it is available only after the employee's claim against the tortfeasor is settled or resolved.[63]

Other than limiting the right to obtain a lien for non-boardable expenses under 21 *Del. C.* § 2118, the 1993 amendment did not otherwise alter Section 2363(e).  In *Harris*, this Court held that the pre-amendment version of Section 2363 allowed an employer or its workers' compensation insurer to assert a subrogation lien against an employee's recovery of benefits under a UIM policy maintained by his employer.[64]  The dicta in *Hurst* and the express ruling in *Simendinger* did not recognize the limited scope of the 1993 amendment and instead mistakenly interpreted the statutory change as entirely eliminating an employer's ability to obtain a lien against benefits paid under an employer-purchased UIM policy.  We therefore overrule *Simendinger* and hold that, except as to expenses excluded from evidence at trial under the PIP statute, Section 2363(e) gives an employer and its

---

[62] *See* Beste & Beste, *supra*, § 15.02(b) (citing *Caruso v. Prudential Prop. & Cas. Ins. Co.*, C.A. No. 85-708 (D. Del. Nov. 20, 1986)); *Brown v. Comegys*, 500 A.2d 611, 614 (Del. Super. 1985).
[63] *See* 19 *Del. C.* § 2363(e).
[64] *Harris*, 513 A.2d at 1309.

workers' compensation insurer a right to assert a subrogation lien against an employee's recovery of benefits under an employer-purchased UIM policy.

The interpretation of Section 2363(e) that we now adopt also is consistent with Delaware public policy. As a general matter, Delaware's public policy seeks to avoid allowing a plaintiff to recover twice for the same injury.[65] The collateral source rule, however, allows double recovery in some contexts under the theory that "a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant."[66] In addition, there are policies underlying the WCA and the UIM statute that must be considered. The public policy supporting the WCA is to compensate an injured worker for lost wages and medical expenses for work-related injuries, regardless of fault.[67] And the policy motivating the UIM statute is to "permit an insured to protect himself from an irresponsible driver causing death or injury."[68]

Those policies do not always align, and balancing the competing policies requires the Court to consider the nature of the case and the interests at issue. In the context of workers' compensation proceedings in which UIM benefits may also be awarded to an injured worker, this Court has applied contract principles to resolve

[65] *See, e.g.*, *Mt. Pleasant Special Sch. Dist. v. Gebhart*, 378 A.2d 146, 148 (Del. Ch. 1977); *cf. Brookfield Asset Mgmt., Inc.*, 261 A.3d at 1277 ("The double recovery rule prohibits a plaintiff from recovering twice for the same injury from the same tortfeasor.").
[66] *Yarrington v. Thornburg*, 205 A.2d 1, 2 (Del. 1964).
[67] *Aetna Cas. & Sur. Co. v. Kenner*, 570 A.2d 1172, 1175–76 (Del. 1990).
[68] *Frank v. Horizon Assurance Co.*, 553 A.2d 1199, 1205 (Del. 1989).

an employer's subrogation rights.[69]  That focus on contractual expectations is consistent with both the WCA and the UIM statute, which are based on benefits secured by contract rather than the fault-based analysis fundamental to tort cases.[70]

Under this contractual analysis, the extent to which the collateral source rule should be applied to permit double recovery depends on "the contractual expectations that underlie the collateral source payment."[71]  As we previously explained in the analogous context of no-fault insurance:

> [T]he conditions under which double recovery should be allowed may best be determined by examining the consideration that has been paid. If the insured has paid consideration for recovery from a collateral source, then recovery should be allowed. If the collateral payments are received *gratis,* then their receipt should bar recovery under the no-fault policy. In the latter instance, the insured has lost nothing, neither wages nor consideration paid to a collateral source for wage compensation. Accordingly, the insured has no loss for which his insurer should provide compensation.[72]

It follows that an employer who purchases UIM coverage for its vehicles and the employees who drive them should be entitled to assert a subrogation lien when that UIM policy reimburses the employee for injuries already compensated under the WCA.  In such a case, the employer has contracted for the supplemental protection and the employee should not receive a double recovery from a fund for

---

[69] *Adams*, 575 A.2d at 1106–07; *accord State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 75 (Del. 1989) (holding that "the policy goals of no-fault insurance can best be served by application of principles of contract rather than tort law").

[70] *Adams*, 575 A.2d at 1106–07; *Harris*, 513 A.2d at 1309.

[71] *Nalbone*, 569 A.2d at 75.

[72] *Id.*

which the employee did not contract.[73]  The interpretation of Section 2363(e) that we adopt today achieves this result.

In issuing its decision in this case, the Superior Court was required to apply *Simendinger*.  Because we are now reversing our holding in *Simendinger*, we also must reverse the Superior Court's decision granting judgment in favor of Cincinatti and Henry with respect to Horizon and Eastern's statutory right to assert a lien.  Section 2363(e) does not prohibit—and in fact expressly allows—an employer and its workers' compensation carrier to obtain a subrogation lien on UIM benefits paid from an employer-purchased policy, other than PIP-eligible expenses under 21 *Del. C.* § 2118.

**B.  The question of whether the UIM Policy precludes Appellants from asserting a lien cannot be resolved on the record before us.**

In their motion for judgment on the pleadings, Appellees alternatively argued that Appellants' declaratory judgment action should be dismissed because, even if the statute permits a lien, Cincinnati's policy prevents Henry from recovering benefits that would be subject to a lien.  Because the trial court concluded that the

---

[73] In contrast, and as Appellants acknowledged in this action, neither an employer nor its workers' compensation carrier has a right to a lien against an employee's recovery from his or her own UIM policy. *See Adams*, 575 A.2d at 1107–08.  Delaware's public policy, as set forth in the UIM statute, permits an insured to contract for "supplemental" protection against losses caused by drivers who carry less liability coverage. *Aetna Cas. & Sur. Co.*, 570 A.2d at 1175–76.  In the case of an employee-purchased policy, the employee has contracted for recovery from a collateral source, and double recovery should be permitted. *See Nalbone*, 569 A.2d at 75.  The employer and workers' compensation insurer have no right to benefit from the employer's policy.

statute and *Simendinger* precluded Appellants from asserting a lien, the court did not reach this alternative argument. Appellees renewed the argument on appeal as an alternative basis to affirm the trial court's ruling. We conclude, however, that addressing this issue on an incomplete record is neither efficient nor helpful to the law's development in this area.

Appellees contend that two provisions in the UIM policy prohibit Henry— and, by extension, Appellants—from obtaining coverage for any claims already paid under the WCA. The Policy's Exclusions section states:

> This insurance does not apply to any of the following:
>
> 1. With respect to an "uninsured motor vehicle" any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) insurer or legal representative without our consent, if the settlement prejudices our rights to recover payment.
>
> 2. The direct or indirect benefit of any insurer or self-insurer under any, workers' compensation, disability benefits or similar law.[74]

In addition, Appellees rely on the Policy's "Limit of Insurance" section, which states, in pertinent part:

> No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Form.
>
> We will not make a duplicate payment under this coverage endorsement for any element of "loss" for which payment has been

---

[74] Complaint Ex. B at 4, *Horizon Servs. v. Henry*, C.A. No. N21C-10-044 (Del. Super.) (D.I. 1).

> made by or for anyone who is legally responsible, including all sums paid under the policy's Covered Autos Liability Coverage.

> We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law. [75]

Appellees maintain that these provisions are enforceable under Delaware law, and they reason that any recovery Henry obtains under the Cincinnati policy will not include claims previously paid under the WCA, so there will be nothing for Appellants to lien. Appellees acknowledge that Henry's complaint against Cincinnati in the UIM Action demands compensation for injuries already paid under the WCA,[76] but they argue that Henry has since conceded that he is not seeking recovery for any previously compensated injuries.[77]

It is possible that once Henry's UIM claim against Cincinnati is resolved, there will be no recovery that would be subject to a lien under Section 2363(e). But we believe the prudent course is to allow those facts to develop through litigation in the trial court rather than asking this Court to issue a hypothetical ruling in the first instance. Moreover, the trial court should have an opportunity to interpret the policy language and resolve Appellants' contention that it is unenforceable under Delaware law. Appellate review, to the extent it becomes necessary, will be more effective after the parties present these factual and legal issues to the trial court on a fully

---

[75] *Id.*
[76] App. to Answering Br. at B12–13.
[77] *See* Am. App. to Opening Br. at A17 (oral argument transcript).

23

developed record.  The parties and the trial court may determine the appropriate procedural posture in which to raise and address those arguments.

## IV.   CONCLUSION

For the foregoing reasons, we reverse the Superior Court's May 2, 2022 Opinion granting Appellees' motion for judgment on the pleadings.  This case is remanded to the Superior Court for further proceedings consistent with this opinion. Jurisdiction is not retained.